IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DEJUANA K. SWEITZER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:08-CV-170 |
| | ) | (Collier/Carter) |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for judgment on the pleadings (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 15).

For the reasons stated herein, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

**Plaintiff's Age, Education and Past Work Experience**

Plaintiff was 53 years of age at the time of the ALJ's decision of August 2, 2007 (Tr. 21, 58). She completed the 10th grade and can read (Tr. 64, 69). Plaintiff alleged disability due to degenerative disc disease, status post surgical discectomy, low back and leg pain, osteoarthritis of

the bilateral knees, osteoarthritis of the bilateral hands, obesity, and carpal tunnel syndrome (Tr. 495-497).

**Application For Benefits**

Plaintiff filed a claim for a period of disability and disability insurance benefits on April 27, 2005[1] and was denied initially and at the reconsideration level. A request for hearing was filed on February 8, 2006 and the hearing was held on June 19, 2007. The claim was denied in a decision issued by the Administrative Law Judge on August 2, 2007. A request for review of this decision was filed on October 5, 2007, and the request for review was denied in a decision issued May 30, 2008. All administrative remedies have been exhausted and this claim is properly before this Court for review.

The Plaintiff amended the onset date of her alleged disability to her 50th birthday, i.e. April 15, 2004 (Tr. 16, 469). She has past relevant work as a self-employed cleaner (light, unskilled), short order cook (light, semi-skilled), and convenience store manager (light, semi-skilled) (Tr. 20, 74, 499). Plaintiff attempted to work after her amended onset date as an office worker but was only able to complete 5 weeks as she was without skills with which to perform the job (Tr. 289). Plaintiff's insured status for disability benefits expired 6/30/2005 (Tr. 38, 63); therefore, disability must be established prior to that date.

**Standard of Review - Findings of the ALJ**

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden

[1] The parties stipulate and agree this is the date of filing of this claim.

of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Services*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case she cannot return to her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which she can perform, considering her age, education and work experience. *Richardson v. Secretary, Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, the Commissioner's findings must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner even if it finds the evidence preponderates against the Commissioner's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Crisp v. Secretary, Health and Human Services*, 790 F.2d 450 n. 4 (6th Cir. 1986). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1037 (6th Cir. 1994), citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986), quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

As the basis of the August 2, 2007 administrative decision that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2005.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 15, 2004 through her date last insured of June 30, 2005 (20 CFR 404.1520(d) and 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairment: Degenerative disc disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work; lift and carry no more than twenty pounds occasionally, ten pounds frequently, sit, stand, and walk six hours each during the completion of an eight-hour workday.

6. Through the date last insured, the claimant's past relevant work as a self employed cleaner, cook, short order cook, and convenience store manager did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability as defined in the Social Security Act, at any time from April 15, 2004, the alleged onset date, through June 30, 2005, the date last insured (20 CFR 404.1520(f)).

(Tr. 16-20). Such findings by the Commissioner are conclusive if they are supported by substantial evidence in the record. *Shaw v. Schweiker*, 730 F.2d 462 (6th Cir. 1984); *Wokojance*

v. Weinberger, 513 F.2d 210 (6th Cir), cert. denied, 423 U.S. 586, 96 S. Ct. 107, 46 L. Ed. 2d 82 (1975). The sole function of this Court is to determine whether the Commissioner's decision is based upon such evidence. Plank v. Secretary of Health and Human Services, 734 F.2d 1174 (6th Cir. 1984); Le Master v. Weinberger, 533 F.2d 337 (6th Cir. 1976). The Supreme Court has defined substantial evidence as " . . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra, 402 U.S. at 401, (quoting Consolidated Edison v. N.L.R.B., 305 U.S. 197, 229, 83 L. Ed. 2d 126, 140, 59 S. Ct. 206 (1938)).

## Issues

The plaintiff contends the following:

I. The ALJ erred in refusing to give great weight to the opinion of the Plaintiff's treating physician.

II. The ALJ erred in failing to apply the proper legal standard in evaluating the Plaintiff's allegations of disabling pain and limitation of function.

III. The ALJ erred in failing to consider all of the Plaintiff's impairments and limitations in posing hypothetical questions to the vocational expert.

## Medical Evidence

Plaintiff suffered from arthritic pain for many years. In November 1999, a knee x-ray confirmed subchondral sclerosis of the tibial plateau and tibial spine spurring. Standing x-rays revealed joint space narrowing (Tr. 218). She was having difficulty working secondary to knee pain (Tr. 219). In 2000, her treating rheumatologist performed x-rays of the hands due to pain and found degenerative spurring at the base of the thumbs, DIPs, and right middle DIP. He also found degenerative facet joint disease of the lumbar spine at L5-S1 and L4-5 with degenerative

spurring at L4 and L5 (Tr. 203).

Her back and leg pain continued to worsen. An MRI was performed on the lumbar spine in June 2002 (Tr. 161). It revealed disc bulge and bilateral facet degenerative change with mild canal stenosis and narrowing of neural foramen at L4-5. At L5-S1 there was a central disc protrusion and bilateral facet degenerative change. Further objective testing revealed nerve root impingement at these same levels. Dermatome evoked potentials and nerve conduction studies were performed in January 2003 which revealed left L5 and bilateral S1 radiculopathies (Tr. 158-159). A decision was made to try conservative measures to alleviate her severe pain.

In December 2003, although there was no acute abnormality but mild degenerative disc disease at L4-L5 and L5-S1, Plaintiff was found to have advanced degenerative changes of the bilateral facet joints at L4-5 and L5-S1 with 2 millimeters of anterior listhesis of L4 onto L5 due to the degree of degeneration (Tr. 287). Bilateral facet injections were given (Tr. 242). Despite these interventions, Plaintiff continued to report severe pain. Physical therapy and aquatic exercises were added to her treatment regimen (Tr. 176-188). The goals of physical therapy were to be able to stand for 20 minutes and walk 100 feet without back pain (Tr. 187). The last treatment note of January 26, 2004 states Plaintiff continued to experience moderate to severe pain in the low back and radicular pain into the left leg. Her activities of daily living were limited, sleep severely disturbed; she had an antalgic gait, and was unable to tolerate prolonged ambulation (Tr. 179).

In March 2004, one month before her amended onset date, a consultative examination was performed at the request of Social Security by Dr. Thomas Mullady (Tr. 223-224). Although it was just a limited examination, he found limited range of motion in the lumbar spine and

diminished ankle reflex in the right ankle. He offered no opinion regarding her ability to function at that time. His assessment of Plaintiff's extremities/spine was as follows:

> There is a decreased range of motion of lumbar spine with forward flexion to 70 degrees, extension to 10 degrees, right and left lateral flexion to 20 degrees. Straight leg raising is permitted to 90 degrees right leg, 80 degrees left leg with complaints of low back pain.
> Deep tendon reflexes are present but depressed in the right ankle compared with the left ankle, present and equal in knees. There are no sensory deficits.
> Gait is normal. The patient does not use an assistive device to walk.

Lumbar epidural steroid injections were the next treatment undertaken. The first was performed in May 2004 when she was diagnosed as having left lower extremity radiculopathy, lumbar spinal stenosis, spondylolisthesis, and lumbar degenerative disc disease (Tr. 240). That injection did help some until she attempted to clean her house. A second injection was performed in June 2004 (Tr. 235). Dr. Bonvalet had suggested the physical therapy and lumbar epidural steroid injections but warned that surgery might well be necessary (Tr. 322-324). Since the injections did not improve her condition, Plaintiff sought out a specialist who performed micro-spine surgery.

On October 5, 2004, The Microspine Surgical Center performed a L5 nerve root block and discogram to confirm the source of the pain prior to performing surgery. The discogram confirmed that the L4-5 and L3-4 discs were causing the pain (Tr. 312-313). Lumbar discectomy was performed at L3-4 and L4-5 (Tr. 310). While her actual back pain was improved by this surgery, the left buttock and groin pain was made even worse (Tr. 308).

Upon return to Dr. Bonvalet, it was found that Plaintiff received no relief from the

surgery and was experiencing numbness and tingling in the left lower extremity (Tr. 319). Another MRI confirmed spondylosis at L3-4 and L4-5 with spinal stenosis at L4-5. Plaintiff complained of pain, worse than at outset. Her pain was referred to as "insidious and progressive." (Tr. 320). Additionally, heel spurs were found to be causing additional pain with ambulation by October 2005 (Tr. 400).

A consultative psychological examination revealed that the Plaintiff suffered from depression and anxiety; however, those impairments would have only a mild affect on her ability to function in a work setting. She had a Global Assessment of Functioning of 70 (Tr. 409, 410).

By 2007, severe carpal tunnel syndrome of the left hand and moderate to severe carpal tunnel syndrome of the right hand had been confirmed (Tr. 419). Surgical release was performed on the left in May 2007 (Tr. 422). The median nerve was found to be extremely flattened and the carpal tunnel was extremely tight. While the numbness and tingling were somewhat improved by the surgery, it still remained (Tr. 419-420).

Dr. Ivey Williamson is the Plaintiff's treating primary care physician. Treatment notes reflect treatment since April of 1999 (Tr. 335-399, 451-471). Dr. Williamson referred Plaintiff to specialists and was provided copies of the treatment notes from those specialists (Tr. 336-399, 451-474). He is board-certified by the American Board of Internal Medicine (Tr. 483). At the time of the hearing, an assessment from Dr. Williamson was submitted. The form indicated Plaintiff suffered from objectively proven impairments which would reasonably be expected to produce pain and/or fatigue of such severity that she would need to lie down periodically during the day, would have difficulty maintaining attention and/or concentration for periods of 2 hours at a time, would interfere with the ability to perform sedentary work on a sustained basis, and

would likely be absent from work more often than 2 days per month due to exacerbations of pain (Tr. 451). At the Appeals Council level, a statement from Dr. Williamson was submitted revealing that, in his opinion, these same limitations existed from at least 4/15/2004 (the Plaintiff's alleged onset date) through 6/30/2005 (the date Plaintiff was last insured) (Tr. 481).

Thomas Mullady

As mentioned above, Thomas Mullady, M.D. performed his first examination of Plaintiff on March 12, 2004 in conjunction with prior application which was merely a limited examination (Tr. 223-224). Plaintiff was noted to be 5'9", weigh 257 pounds, and have limited lumbar range of motion as well as diminished reflex at the right ankle. No opinion was offered regarding her residual functional capacity. However, another consultative examination was performed by Dr. Mullady on January 6, 2006, six months after Plaintiff's date of last insured. At that time, Plaintiff was again found to be 5'9" tall and weighed 267 pounds (Tr. 403). Lumbar range of motion remained limited but the ankle reflexes were now found to be within normal limits. She was found to also suffer from hypertension. At this examination, Dr. Mullady assessed Plaintiff's Extremities/Spine as follows:

> There is no peripheral edema. There are no gross joint deformities. The patient wears a right wrist brace which was removed. She says she wears the brace because of pain at the base of her thumb. There is decreased range of motion of lumbar spine with forward flexion to 60 degrees, extension to 10 degrees, right and left lateral flexion to 20 degrees. Straight leg raising is permitted to 90 degrees bilaterally in the supine position. Range of motion of all other joints including wrists and fingers is within normal limits. The patient complains of pain in the base of the right thumb with movements of the thumb. Gait is normal. Muscle strength in all extremities is normal. Grip strength is normal bilaterally. Manual dexterity is normal bilaterally.

Based on this examination, Dr. Mullady found that the Plaintiff would be capable of sedentary work with lifting and/or carrying 10 pounds occasionally but nothing frequently, standing/walking with normal breaks for at least 2 hours and sitting with normal breaks for a total of about 6 hours in an eight hour workday (Tr. 404).

State Agency Physicians

In March 2004, a month before her alleged onset date, in conjunction with the prior application, a State Agency non-examining physician, Dr. Moore, opined Plaintiff would be capable of lifting 50 pounds occasionally, 25 pounds frequently, standing and/or walking about 6 hours and sitting about 6 hours in an 8 hour day (Tr. 226). In September 2005, in conjunction with the current application for benefits, a State Agency physician, Dr. Gulbenk, limited her to lifting 20 pounds occasionally, 10 pounds frequently, standing and/or walking for 6 hours, and sitting for 6 hours per 8 hour day (Tr. 328). Plaintiff was also limited to only occasionally climbing ramps or stairs, never climbing a ladder/rope/scaffolds, and occasionally stooping, kneeling, crouching and crawling (Tr. 329). In January 2006, six months after Plaintiff's date of last insured, a different State Agency physician found Plaintiff capable of lifting 50 pounds occasionally, 25 pounds frequently, standing and/or walking for 6 hours, and sitting for 6 hours in an 8 hour workday (Tr. 412). This physician also felt that Plaintiff could frequently perform the postural limitations (Tr. 413).

Non-Medical Evidence

In her first application, Plaintiff reported that her lower back and left leg pain began in 1997 or 1998, was worsening with time, and was exacerbated by standing over 20 minutes, walking any distance, sitting over 1 hour, and laying down flat (Tr. 82). Shopping required using

a wheelchair, household chores required frequent rest breaks, and she had to sleep in her recliner (Tr. 83). Her best friend confirmed that standing, walking or sitting in one position worsened Plaintiff's pain and that she slept in a recliner (Tr. 87). She also noted that she had difficulty riding in a car for any length of time, could not lift heavy items, and sometimes had to have help getting up from a sitting position (Tr. 91).

Plaintiff's description of her pain in the current application was similar except she reported that the pain seemed to be more intense since surgical intervention (Tr. 105). Her best friend confirmed that she still used a motorized wheelchair for shopping due to the inability to stand or walk for long (Tr. 112). She reportedly could not lift over 5 pounds and could only walk or stand for 30 minutes at a time (Tr. 114) and was utilizing the hospital bed that had previously been ordered (Tr. 92, 115).

At the hearing, Plaintiff testified that she had to quit work in 1999 because her back pain prohibited her from being able to perform the standing required of the job (Tr. 493). Neither surgery nor spinal injections improved her pain (Tr. 493-494). Another surgery was suggested; however, after the bad result she had after the first surgery, she was frightened to attempt it (Tr. 494). The Plaintiff also noted that she had been diagnosed with osteoarthritis in the knees many years before that had worsened with time (Tr. 495). She had also been diagnosed with bilateral carpal tunnel syndrome and surgery on the left had recently been performed (Tr. 496). The pain, numbness, and tingling in her hands had been gradually coming on since she stopped work (Tr. 497).

Vocational Testimony

The ALJ asked the VE to classify the claimant's past relevant work. He described her

work as a self-employed cleaner (light and unskilled), short order cook (light and semi-skilled, SVP 3), convenience store manager (light and semi-skilled, SVP 4), and cook (light and semi-skilled, SVP 3) (Tr. 499). The ALJ asked no further questions of the VE. However, in response to cross-examination, the VE testified that those jobs provided no skills which would be transferable to sedentary work activity (Tr. 499).

**Analysis**

For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy. Because I reach this conclusion, I will not address in detail each issue raised in Plaintiff's motion.

In his August 2, 2007, decision the ALJ finds Plaintiff has the residual functional capacity to perform a full range of light work (Tr. 17). In doing so, The ALJ rejects the opinion of the treating physician and also rejects the opinion of the Consultative Physician, Dr. Mullady, who found plaintiff limited to sedentary work. He does so on the basis that Mullady's opinion was slightly more than six months after Plaintiff's date of last insured and further both opinions were not supported with facts or findings (Decision, Tr. 19).

The Commissioner argues there is nothing amiss with such analysis noting the regulations explicitly provide that opinions are to be given less weight if not supported by clinical findings or if contradicted by other evidence. See § 404.1527(d)(3)-(4); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation"). Further, the Commissioner points to case law which supports the contention that post-date-last-insured evidence generally lacks probative value. See *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (tests from 1981

and 1983 were "minimally probative" of claimant's condition in 1979); Liebisch v. Sec'y of Health & Human Svcs., 1994 WL 108957, *2 (6th Cir. Mar. 30, 1994) (1990 report was "necessarily less accurate" about claimant's condition from 1985-89 than it was about her status in 1990) Weetman v. Sullivan, 877 F.2d 20, 22 (6th Cir. 1989) (deterioration in the claimant's condition after the period of eligibility is irrelevant); Siterlet v. Sec'y of Health & Human Svcs., 823 F.2d 918, 920 (6th Cir. 1987) (doctor's report dated eight months after end of eligibility period was "minimally probative").

However, there is case law to support the conclusion that medical evidence after the DLI is relevant to the prior period. In Begley v. Matthews, 5444 F. 2d 1345, 1354 (1976) the court held: "Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." Furthermore, in Higgs v. Bowen, 880 F. 2d 860, 863 (198), the court held that the Secretary must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured. Further, in Garner v. Heckler, 745 F. 2d 383,391 (1984), the claimant's insured status expired on June 30, 1981. The record included a conclusory statement from a physician dated June 3, 1981 that the claimant was disabled. In addition, the record contained medical findings supporting the claimant's disability following an examination on August 28, 1981. In Garner, the court held it was error for the ALJ to fail to infer the medical findings from August 28, 1981 supported the conclusory opinion given three months earlier. The record as a whole required a finding that the claimant became disabled prior to the expiration of his insured status.

In this case, the ALJ seems to acknowledge Plaintiff asserted continuing problems

stating, "The medical evidence of record demonstrates a lineage of complaints of lower back pain and that she had been given medication therapy to try and relive [sic] her symptoms which had occurred before her alleged onset date of April 15, 2004 (Decision, Tr. 18). I note the Commissioner sent Plaintiff to Dr. Mullady for an evaluation. The ALJ does not mention the fact Dr. Mullady saw plaintiff before plaintiff's date of onset and does not address the similarities of Dr. Mullady's findings on those two dates. He did not seek an opinion from Dr. Mullady to answer the critical question of whether Plaintiff was limited to sedentary work during the period from April 15, 2004, her date of onset, and June 30, 2005, her date of last insured. Instead, he gave the opinions of both the treating and consulting physicians no weight (Tr. 19). Remand is necessary to get Dr. Mullady's opinion as to whether his post DLI opinion would not apply to the period between onset and the date of last insured.

The opinion of the ALJ relies heavily on only part of the opinion of Dr. Gulbenk, a non-examining, reviewing state agency physician (Tr. 19). However, the ALJ rejects the part of Dr. Gulbenk's opinion which stated Plaintiff was also limited to only occasionally climbing ramps or stairs, never climbing a ladder/rope/scaffold, and occasionally stooping, kneeling, crouching and crawling (Tr.329). He articulates no reason for rejecting these restrictions. The case must be remanded to allow the ALJ to articulate a valid basis for rejecting this limitation. If there is no valid basis then at best Plaintiff would be restricted to a limited range of light work or less. If so, a VE will have to advise the ALJ as to whether there are jobs in the national economy plaintiff can perform or whether she can perform her past jobs.

The ALJ concludes Plaintiff to be capable of a full range of light work but his opinion refers to no medical evidence which supports this finding. I therefore cannot find it to be based

on substantial evidence.

Plaintiff also points to verification submitted to the Appeals Council that Dr. Williamson's opinion did indeed relate back to the time period under consideration (Tr. 481). However, this information was not available to the ALJ at the time of the administrative hearing and therefore cannot be heard outside of consideration under Sentence Six. No such argument is made, nor is it probable it could be because it is unlikely the evidence could not have been obtained prior to the hearing.

In cases where there is an adequate record, the Commissioner's decision denying benefits can be reversed and benefits awarded if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (*See Newkirk v. Shalala*, 25 F.3d 316 at 318 (6th Cir. 1994). The record adequately establishes the plaintiff's entitlement to benefits "only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). In this case, there is evidence of disability which I conclude is strong but there is some evidence in the record to support a higher level of function than that alleged by Plaintiff. . Because the ultimate decision of disability rests with the Commissioner, and because there is evidence in the record to the contrary, I conclude remand under sentence four is the proper remedy.

On remand, the ALJ or Plaintiff can obtain the opinion of Dr. Mullady as to whether his sedentary assessment would have applied in the period of time at issue in light of his examinations before her onset date and after her date of last insured and provide basis or explanation of his opinion. The ALJ will also need to address the opinion of the treating

physician given after the original hearing that the limitations he found existed during the period of time between her onset date and date of last insured.

**Conclusion**

For the foregoing reasons, I conclude the Commissioner has not met the burden of showing Plaintiff is capable of performing light work and that the Commissioner's decision is not supported by substantial evidence. Accordingly, I RECOMMEND that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 12) be GRANTED in part, only to the extent plaintiff seeks remand under Sentence Four of 42 U.S.C. § 405(g) and be DENIED to the extent plaintiff seeks reversal and an award of benefits;

2. Defendant's motion for summary judgment (Doc. 15) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

Dated: June 16, 2009

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).